1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KAREEM J. HOWELL,                        No.  2:19-cv-0611 DB P

12              Plaintiff,

13        v.                                  ORDER AND

14   J. JOHNSON, et al.,                      FINDINGS AND RECOMMENDATIONS

15              Defendants.

16

17        Plaintiff, a state prisoner, proceeds without counsel in a civil rights action brought under

18   42 U.S.C. § 1983. Defendants move for an order declaring plaintiff to be a vexatious litigant

19   under federal law and requiring him to post security in the amount of $8,800 pursuant to Local

20   Rule 151(b) before this matter proceeds. (ECF No. 21.) Plaintiff opposes the motion and

21   defendants filed a reply. (ECF Nos. 29, 30.)

22        I.      Background

23        This action (the "present case") involves conduct that allegedly occurred in March of 2019

24   while plaintiff was at CSP-SAC. (ECF No. 1.) The complaint alleges plaintiff had filed a prior

25   civil rights action against defendants at CSP-SAC (the "prior lawsuit"). The prior lawsuit alleged

26   conduct by Sgt. J. Johnson and C/O S. Snowden, who are defendants in the present case, among

27   others. See Howell v. Pleshchuk, 18-cv-1788 DB (E.D. Cal.). Plaintiff filed the prior lawsuit on

28   June 26, 2018 and it settled on February 28, 2019.

                                              1

In the present case, plaintiff alleges Sgt. D. Anderson used excessive force while cuffing plaintiff on March 14, 2019, and falsely accused plaintiff of assaulting him with a razor blade during that incident. Plaintiff alleges Anderson and the three other defendants- Sgt. J. Johnson, C/O S. Snowden, and Staff Psychologist J. Gamboa- retaliated against him because of the prior lawsuit and because of plaintiff's staff complaints. The retaliatory conduct occurred between March 7, 2019 and March 22, 2019, and consisted of statements, name-calling (such as calling plaintiff a "snitch" and a "rat"), and false Rules Violations Reports. Plaintiff alleges he attempted to exhaust his administrative remedies before filing the present case; however, defendant Anderson informed him that Anderson had "intercepted the appeal form" and collected all of plaintiff's complaints. (ECF No. 1 at 5, 12.) Plaintiff signed his verified complaint for the present case on March 28, 2019 and caused it to be filed on April 9, 2019.

By order filed on January 29, 2020 (ECF No. 9), the court screened plaintiff's complaint and found the allegations were adequate to proceed against defendants J. Johnson, S. Snowden, J. Gamboa, and D. Anderson on a retaliation claim under the First Amendment. The court also determined plaintiff could proceed with an Eighth Amendment excessive force claim against Anderson pertaining to the March 14, 2019, cuffing incident.

**II.     Request for Judicial Notice**

Defendants request the court to take judicial notice of court records, records of the California Department of Corrections and Rehabilitation ("CDCR"), and LexisNexis CourtLink search results for plaintiff dated December 5, 2020. (ECF No. 22.) Pursuant to Federal Rule of Evidence 201(b), a court may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Public records are properly the subject of judicial notice because the contents of such documents contain facts that are not subject to reasonable dispute, and the facts therein "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Id.; see Intri-Plex Techs. v. Crest Grp., Inc., 499 F.3d 1048, 1052 (9th Cir. 2007).

////

2

The request to take judicial notice of the court records is granted. <u>See</u> <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688 (9th Cir. 2001); Fed. R. Evid. 201(b). The court declines to take judicial notice of the LexisNexis search results or the CDCR records, neither of which are shown to be public records or "sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b), despite being generated in the normal course of business. Nevertheless, the CDCR records are accompanied by authenticating declarations of the custodians of records such that the court considers them as properly submitted evidence for this matter.

### III.    Defendants' Motion for Security

Defendants contend plaintiff meets the federal standard to be declared a vexatious litigant. They seek to require him to post security in the amount of $8,800 in order for this litigation to proceed. Defendants assert plaintiff's litigation history reflects an excessive number of cases (more than 70) filed in the Eastern District of California.[1] This total includes more than 40 cases pending at the time the motion was filed, 13 adverse adjudications within three years, multiple lawsuits against the same defendants, a large number of cases raising unexhausted claims, and what defendants argue were fraudulent in forma pauperis ("IFP") requests.

### A.    Legal Standards

Local Rule 151(b) provides:

> On its own motion or on motion of a party, the Court may at any time order a party to give a security, bond, or undertaking in such amount as the Court may determine to be appropriate. The provisions of Title 3A, part 2, of the California Code of Civil Procedure, relating to vexatious litigants, are hereby adopted as a procedural Rule of this Court on the basis of which the Court may order the giving of a security, bond, or undertaking, although the power of the Court shall not be limited thereby.

E.D. Cal. L.R. 151(b). Title 3A, part 2, of the California Code of Civil Procedure includes the following relevant provision:

> In any litigation pending..., at any time until final judgment is entered, a defendant may move the court, upon notice and hearing, for an order requiring the plaintiff to furnish security.... The motion for an order requiring the plaintiff to furnish security shall be based

---

[1] All cases discussed herein filed by plaintiff are Eastern District of California cases.

1
2

upon the ground, and supported by a showing, that the plaintiff is a
vexatious litigant and that there is not a reasonable probability that
he or she will prevail in the litigation against the moving defendant.

3   Cal. Civ. Proc. Code § 391.1.

4       California law defines a vexatious litigant as a person who, in the seven years immediately

5   preceding the motion, has commenced, prosecuted, or maintained in propria persona at least five

6   litigations other than in a small claims court that have been finally determined adversely to the

7   person. Cal. Civ. Proc. Code § 391(b)(1). To order the posting of a security under § 391.1, a court

8   must conclude, after hearing evidence, "there is no reasonable probability that the plaintiff will

9   prevail in the litigation against the moving defendant." Id. at § 391.3(a).

10      The traditional federal standard for declaring a litigant to be vexatious is more stringent. A

11  district court has the inherent authority to enter pre-filing orders against vexatious litigants under

12  the All Writs Act, 28 U.S.C. § 1651. De Long v. Hennessey, 912 F.2d 1144, 1147 (9th Cir. 1990);

13  Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1057 (9th Cir. 2007). Such orders may

14  include enjoining litigants with abusive and lengthy histories by restricting the filing of further

15  meritless cases. De Long, 912 F.2d at 1147. Pre-filing injunctions are an extreme remedy,

16  however, and should be rarely used because such sanctions can tread on a litigant's due process

17  right of access to the courts. Molski, 500 F.3d at 1057.

18      In the context of declaring a litigant to be vexatious for the purpose of imposing a

19  restrictive pre-filing order, the Ninth Circuit requires the following (1) the plaintiff must be given

20  adequate notice and an opportunity to oppose a restrictive pre-filing order prior to entry; (2) the

21  court must present an adequate record for review by listing the case filings that support its order;

22  (3) the court must make substantive findings as to the frivolous or harassing nature of the

23  plaintiff's actions; and (4) the order must be narrowly tailored to fit the specifics of the plaintiff's

24  abuses. De Long, 912 F.2d at 1147-49. Under the federal standard, litigiousness alone is

25  insufficient to support a finding that a plaintiff is a vexatious litigant. See Moy v. United States,

26  906 F.2d 467, 470 (9th Cir.1990). The focus is on the number of suits that were frivolous or

27  harassing in nature rather than the number of suits that were adversely decided. See De Long, 912

28  F.2d at 1147-48; see also Microsoft Corp. v. Motorola, Inc., 696 F.3 872, 886 (9th Cir. 2012) (the

4

excessive number of lawsuits must be "without reasonable or probable cause or excuse, harassing, or annoying").

### B.   Defendants' Arguments for Vexatiousness

#### 1.   IFP Declarations

Defendants assert plaintiff has fraudulently applied for IFP status in approximately 20 cases by falsely declaring under penalty of perjury that he had not received any money from any sources within the year prior, even though he had received $19,300 in settlement funds. Defendants explain the settlement funds were deposited into plaintiff's inmate trust account and then applied to outstanding restitution and court fees. Regardless of whether these obligations exceeded the amount of settlement funds received, defendants argue, plaintiff's failure to disclose the sum suggests bad faith given his familiarity with the IFP process. (ECF No. 21-1 at 9.)

A district court has the inherent power to sanction a litigant "if the court specifically finds bad faith or conduct tantamount to bad faith." See Fink v. Gomez, 239 F.3d 989, 994 (9th Cir. 2001). Defendants do not, however, assert plaintiff made a false IFP declaration in this case and plaintiff's IFP status is not at issue in this case. Accordingly, whether plaintiff made intentionally false IFP declarations in other cases is more appropriately addressed in those cases.

#### 2.   Excessive Cases and Adverse Determinations

Defendants assert plaintiff has filed an excessive number of civil rights actions in this district with the number of cases filed exceeding 70. In addition to the 41 cases active at the time the motion was filed, plaintiff has filed 30 lawsuits that were terminated prior to the filing of the present motion.[2] Of the 30 lawsuits terminated prior to the filing of the motion, 14 were terminated through settlement,[3] one was voluntarily dismissed with prejudice by stipulation from

---

[2] After defendants filed the present motion, plaintiff requested and obtained voluntarily dismissal of several more of his cases.

[3] Of the 14 cases terminated through settlement, 11 were part of a global agreement reached in 2019 at the settlement conference of the prior lawsuit described in plaintiff's complaint in the present case. Pursuant to that settlement agreement, plaintiff received a total of $19,300 deposited into his inmate trust account in May of 2019. (ECF No. 21-1 at 6.) This is the settlement sum underlying defendants' argument that plaintiff submitted fraudulent IFP requests in other cases.

both parties, and the remaining 15 were resolved against plaintiff, mostly through voluntary dismissal. (ECF No. 21-1 at 5-6.)

As set forth, neither litigiousness alone nor multiple adverse determinations show vexatiousness under the federal standard. See Moy, 906 F.2d at 470; De Long, 912 F.2d at 1147-48. "[I]t is incumbent on the court to make 'substantive findings as to the frivolous or harassing nature of the litigant's actions.'" De Long, 912 F.2d at 1147-48. "To make such a finding, the district court needs to look at 'both the number and content of the filings[.]" De Long, 912 F.2d at 1148.

"A pattern of harassment is shown when the filing of similar types of actions constitutes an intent to harass the defendant[s] or the court." Galeska v. Duncan, 894 F. Supp. 1375, 1383 (C.D. Cal. June 29, 1995) (citing De Long, 912 F.2d at 1148 n.3). Among other factors, the requisite intent may be derived from a litigant's targeting of especially vulnerable defendants, Molski, 500 F.3d at 1060-61, desire not to litigate the merits of the claims, but merely to force defendants into cash settlements, id., or repeated assertion of already-adjudicated claims despite clear knowledge of their lack of merit, Galeska, 894 F. Supp. at 1382-83. The court looks to both the number and content plaintiff's filings rather than the sheer number of cases filed or adversely decided against him.

### 3.     Multiple Suits against the Same Defendants

Defendants argue plaintiff's filing of multiple lawsuits against the same defendants is harassing. For example, defendants demonstrate that plaintiff has sued J. Burns, C. Gamboa, and D. Tran, who are not defendants in this case, a total of nine times, seven times, and four times, respectively. (ECF No. 21-1 at 8.) Focusing on the defendants in this case, plaintiff has sued defendants J. Johnson and D. Anderson on multiple occasions, as listed below.

### a.     Cases Reviewed

Plaintiff has sued defendant Johnson on at least seven occasions, including the present case and the following cases:

1.     Howell v. Pleshchuk, 2:18-cv-1788, which is the prior lawsuit referenced in the present case, was filed on June 19, 2018. Plaintiff's first amended complaint alleged his claims

were only partially exhausted because Anderson (who was not a defendant) refused to give him a grievance form. After screening, plaintiff proceeded with Eighth Amendment medical claims and First Amendment retaliation claims. The case was closed on March 11, 2019 after a successful settlement conference.

2.      Howell v. Cross, 2:19-cv-0544, was filed on March 28, 2019. As in the present case, plaintiff alleged conduct that occurred on March 14, 2021. Plaintiff alleged R. Cross ordered Anderson (who was not a defendant) to assault plaintiff and ordered that he be subjected to a punitive cell search. On the same day, defendant Johnson handcuffed plaintiff and escorted him to a secluded room where he was assaulted and badly beaten by unspecified individuals. The complaint alleged administrative remedies were unavailable because Cross ripped up plaintiff's grievance. (ECF No. 1 at 3.) This case was voluntarily dismissed on February 4, 2021, prior to screening.

3.      Howell v. Johnson, 2:20-cv-0095, was filed on January 14, 2020. This case referenced plaintiff taking legal action against Johnson in March of 2019 for using excessive force but appeared to be based on subsequent events. Plaintiff's complaint alleged he had no administrative remedies available because Sgt. Parham claimed there were no grievance forms. This case was voluntarily dismissed on January 27, 2021, after screening, but before any defendants were served.

4.      Howell v. Overby, 2:20-cv-0209, was filed on January 29, 2020. The complaint alleged violations of plaintiff's rights under the First and Eighth Amendments premised on retaliation, medical care and conditions of confinement. Plaintiff alleged administrative remedies were unavailable because C/O Campbell denied plaintiff's request for a grievance form. This case was voluntarily dismissed on January 27, 2021, prior to screening.

5.      Howell v. Johnson, 2:20-cv-0520, was filed on March 6, 2020. Like the present case and Howell v. Cross, 2:19-cv-0544, the complaint involves alleged events that took place on March 14, 2019. Plaintiff alleged as background that he reported Anderson (who was not named as a defendant) for utilizing unnecessary force against plaintiff after which the named defendants retaliated through another physical attack and a punitive cell search. Defendant Johnson ordered

7

plaintiff to cuff up, after which F. Troja placed the cuffs on plaintiff, after which Troja, Johnson, and J. Mokhtar escorted plaintiff somewhere and beat him with closed fists and a baton. Plaintiff alleged Johnson, Troja, and Mokhtar acted in retaliation for plaintiff's grievance of a staff assault by Anderson. After that assault, K. Childs twisted plaintiff's wrist[4] while other defendants failed to intervene. The complaint alleges plaintiff exhausted administrative remedies prior to filing suit. The defendants filed a responsive pleading and the case is still open.

6.      Howell v. Baker, 2:20-cv-1210, was filed on June 17, 2020. Plaintiff alleged Johnson and others engaged in a conspiracy involving harassment, retaliation, physical attacks, and property theft during April and May of 2020. Plaintiff alleged administrative remedies were unavailable because Johnson and another individual denied him a grievance form. This case was voluntarily dismissed on January 27, 2021, prior to screening.

Plaintiff has sued defendant Anderson on at least three occasions, including in the present case and in the following cases:

1.      Howell v. Liddell, 2:19-cv-0578, was filed on April 3, 2019. Plaintiff alleged Anderson and two other individuals retaliated by confiscating his typewriter on March 29, 2019 because of a staff complaint and a civil rights complaint. Plaintiff alleged administrative remedies were unavailable because R. Cross ripped up plaintiff's grievance in front of plaintiff. This case is still open with an evidentiary hearing currently scheduled to be held on October 4, 2021 on the issue of exhaustion.

2.      Howell v. Lindquist, 2:19-cv-0612, like the present case, was filed on April 9, 2019. On June 14, 20219, the court screened the complaint and found it to state cognizable claims under the First Amendment based on allegations the defendants retaliated against plaintiff and denied him access to the courts on April 4, 2019. Plaintiff alleged he was unable to exhaust his claims because Anderson denied him a grievance form. Defendants were served and answered the complaint. The case was then voluntarily dismissed on January 29, 2021.

////

---

[4] In the present case, plaintiff alleges defendant Anderson twisted plaintiff's wrist on March 14, 2019, causing injury.

8

**b.**     **Analysis**

The number of cases filed against defendants Johnson and Anderson is not, by itself, harassing or vexatious. In addition, the cases listed and reviewed do not include any that are entirely duplicative or any that asserted already-adjudicated claims. However, some cases clearly involve the same subject matter.

Each of the three reviewed cases against Anderson is premised on alleged retaliatory conduct by Anderson that took place between March 14, 2019 and April 4, 2019. But the mere fact of this timing and plaintiff's litigiousness does not show frivolity or harassment.

More troubling is that plaintiff filed at least three cases- Howell v. Cross, 2:19-cv-0544, Howell v. Johnson, 2:20-cv-0520, and the present case- alleging similar events and retaliatory conduct that allegedly occurred on March 14, 2019. Despite the alleged retaliatory conduct occurring on the same day, plaintiff separately filed three cases with related and overlapping allegations and is currently prosecuting two of them. See Adams v. California Dept. of Health Services, 487 F.3d 684, 688 (9th Cir.2007) ("Plaintiffs generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant.")

Plaintiff's filing of multiple cases based on the events of March 14, 2019 may be problematic for another reason. In the present case, plaintiff alleges defendant Anderson twisted his left wrist while cuffing him on March 14, 2019, causing injury. In Howell v. Johnson, 2:20-cv-0520, plaintiff alleged K. Childs twisted his left wrist on March 14, 2019, causing injury. In both cases, plaintiff proceeds with an Eighth Amendment claim against the defendant alleged to have injured plaintiff's left wrist.

Plaintiff further alleged in both Howell v. Johnson, 2:20-cv-0520, and Howell v. Cross, 2:19-cv-0544, that defendant Johnson participated in a beating of plaintiff, along with other staff, on March 14, 2019. In the present case, in contrast, plaintiff makes no mention of an alleged physical assault by Johnson on March 14, 2019, despite naming Johnson as a defendant and pleading claims premised on conduct that largely occurred on March 14, 2019.

////

9

None of the listed and reviewed cases, viewed individually, is frivolous in the sense that the allegations could have "no arguable basis in law or fact." See Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995). But "litigation may have some merit and still be 'vexatious," which is defined as "without reasonable or probable cause or excuse; harassing; annoying.'" Microsoft Corp., 696 F.3d at 886. The Ninth Circuit has explained:

> Frivolous litigation is not limited to cases in which a legal claim is entirely without merit. It is also frivolous for a claimant who has some measure of a legitimate claim to make false factual assertions. Just as bringing a completely baseless claim is frivolous, so too a person with a measured legitimate claim may cross the line into frivolous litigation by asserting facts that are grossly exaggerated or totally false. [….] It is a question of degree where the line falls between aggressive advocacy of legitimate claims and the frivolous assertion of false allegations.

Molski, 500 F.3d at 1060-61. In Molski, the district court reviewed the allegations of hundreds of lawsuits and found the plaintiff's baseless and exaggerated claims of injuries exceeded any legitimacy and were made for the purpose of coercing settlement. The Ninth Circuit upheld as not clearly erroneous the district court's determination of vexatiousness as well as the pre-filing order subjecting all future cases filed by the plaintiff to an initial screening review. See Id.

Plaintiff's cases reviewed for the purpose of this motion do not reveal the same extent of apparent and all-encompassing frivolity as was found in Molski, 500 F.3d at 1060-61. But such a finding would not necessarily be required as defendants do not seek a restrictive pre-filing order.

Plaintiff has filed multiple cases involving the events of March 14, 2019 and two cases with potentially inconsistent allegations remain pending. Although a malicious intent is not inferred, these filings could be viewed as harassing or frivolous. The number and content of these filings weigh in favor of a finding of vexatiousness as it relates to the present motion for security.

### 5.    Pattern of Filing and Dismissing Unexhausted Claims

Defendants argue plaintiff's repeated filing of unexhausted claims is harassing, particularly in light of his pattern of subsequently requesting dismissal of such claims. In the cases listed in the previous subsection, for example, plaintiff alleged administrative remedies were unavailable due to staff conduct in eight of nine cases reviewed. The court additionally takes judicial notice of the unexhausted claims voluntarily dismissed in the listed cases that follow.

10

**a.     Cases Reviewed**

1.      In <u>Howell v. Burns</u>, 1:19-cv-0715, after multiple defendants moved for summary judgment for failure to exhaust, plaintiff filed a declaration conceding non-exhaustion as to some claims and requested dismissal of those claims.

2.      In <u>Howell v. Burns</u>, 1:19-cv-0556, plaintiff alleged he attempted to file a grievance but was prevented from completing the process due to a defendant's actions. The defendants filed a motion for summary judgment asserting failure to exhaust administrative remedies. The case was dismissed with prejudice on February 12, 2021 after the parties filed a stipulation to voluntarily dismiss.

3.      In <u>Howell v. Cruz</u>, 1:19-cv-0782, plaintiff alleged he was prevented from exhausting his claims because a non-defendant correctional officer denied him a grievance form. The court adopted the magistrate judge's recommendation that summary judgment be granted for failure to exhaust, finding plaintiff had knowledge how to submit the grievance form without direct interaction with a staff member upon who he is complaining.

4.      In <u>Howell v. Silva</u>, 1:20-cv-0133, plaintiff alleged the grievance process was unavailable because the defendant put the complaint form in the trash. After the defendants moved to dismiss for failure to exhaust administrative remedies, plaintiff moved for voluntary dismissal of the action and the case was dismissed.

**b.     Analysis**

In general, the filing of non-exhausted claims, without more, does not demonstrate a malicious or vexatious intent on the part of the plaintiff. <u>E.g.</u>, <u>Goolsby v. Cate</u>, 1:13-cv-00119 DAD EPG (PC), 2016 WL 8731177, at *10-11 (E.D. Cal. July 29, 2016). Similarly, the voluntary dismissal of a case or cases does not typically demonstrate vexatiousness. <u>E.g.</u>, <u>Gonzales v. Podsakoff</u>, 1:15-cv-00924 DAD SKO (PC), 2018 WL 1316890, at *5 (E.D. Cal. Mar. 14, 2018), report and recommendation adopted, 2018 WL 2939087 (June 12, 2018).

Where there exists a strong pattern of filing and dismissing cases prior to decision on the merits, however, a district court does not err in inferring an intent to harass the defendants. <u>See</u> <u>Molski</u>, 500 F.3d at 1060 ("The district court also did not err when it inferred an intent to harass

defendants into settlement from the fact that [the plaintiff] had tried on the merits only one of his

roughly 400 ADA cases."); Fields v. Patterson, 1:10-cv-01700 LJO EPG (PC), 2016 WL

1162083, at *10 (E.D. Cal. Mar. 24, 2016) (finding the plaintiff's pattern of voluntarily

dismissing or otherwise abandoning cases before a final decision on the merits was harassing),

report and recommendation adopted, 2016 WL 4417686 (Aug. 18, 2016).

      In Fields, for example, this court found as follows:

> Plaintiff's pattern of voluntarily dismissing or abandoning cases before a final decision on the merits is particularly troubling. Of the twenty-three cases examined by the Court, Plaintiff voluntarily dismissed eight and abandoned two, in various stages of the proceedings. (Citations.) Together, these ten cases proceeded for more than twenty-one years, each abruptly ending without a final decision on the merits. Plaintiff has not addressed his voluntarily dismissals, abandoned cases, or his motives in pursuing litigation, but such actions cause needless expense to other parties and pose an unnecessary burden on the Courts and their personnel, which the Court finds to be harassing. Ringgold-Lockhart, 761 F.3d at 1062. By this behavior, Plaintiff has caused other parties and their counsel to needlessly spend time, effort, and expense conducting discovery and moving for summary judgment in multiple cases that Plaintiff abruptly abandoned without explanation. Plaintiff also shows a pattern of failing to respond timely to discovery requests and Court orders in the course of litigation, and dismissing cases when faced with a motion for summary judgment or the Court's finding that his complaint lacks merit. Such behavior is contrary to good faith litigation.
>
> Overall, based on the foregoing, the Court finds that Plaintiff's behavior constitutes sufficient harassment, annoyance, and abusive litigation for the Court to declare him a vexatious litigant.

Fields, 2016 WL 1162083, at *10.

      Here, while plaintiff sought and obtained voluntary dismissal of several of his cases after

the filing of the pending motion, defendants have demonstrated this pattern also existed prior to

the filing of this motion. Plaintiff's opposition to the pending motion does not address his

motivation for pursuing litigation and then voluntarily dismissing cases, except to state he "has

voluntarily dismissed several cases only after speaking to the defendants in those matters, and

together with the defendants decided to resolve the issue without a jury trial." (ECF No. 26 at 5.)

Plaintiff states, however, he will prosecute his claims in the present case and see them through to

the end. (Id. at 6.)

Defendants dispute plaintiff's characterization of his voluntarily dismissed cases. They respond accurately that the ten cases they identified as voluntary dismissals at pages 6-7 in their memorandum (ECF No. 21-1) were dismissed upon plaintiff's unilateral request at various stages of the litigation and without any evidence of an agreement between the parties. These dismissals occurred at various stages of the litigation, but mostly before responsive pleadings were filed. In other cases, as set forth, the voluntary dismissals occurred after the court or both the court and the defendants expended time and resources on the cases. E.g., Howell v. Burns, 1:19-cv-0556; Howell v. Lindquist, 2:19-cv-0612; Howell v. Burns, 1:19-cv-0715; Howell v. Johnson, 2:20-cv-0095; Howell v. Silva, 1:20-cv-0133.

Such a pattern is abusive of the court's resources as well as the resources of the defendants. This is particularly true where plaintiff has filed multiple cases involving the same events. Plaintiff's pattern of filing unexhausted claims and then voluntarily dismissing them, particularly after the court, defendants, or both expended a significant amount of time working on the cases, is sufficiently harassing to declare him to be a vexatious litigant.

## C.     Chances of Prevailing

In order to require plaintiff to post security, the court must find there is no reasonable probability that he will prevail against the moving defendants in the present case. See Local Rule 151(b); Cal. Civ. Proc. Code § 391.3(a). In determining whether there is no reasonable probability of success, a court may determine whether a claim is foreclosed as a matter of law but may also weigh the evidence without assuming the truth of the plaintiff's allegations. See Moran v. Murtaugh Miller Meyer & Nelson, LLP, 40 Cal.4th 780, 784-85 (2007) (holding that Cal. Civ. Proc. Code § 391.2 provides for weighing of evidence); Golin v. Allenby, 190 Cal. App. 4th 616, 642 (2010) (holding that inability to prevail may be shown by weight of evidence or lack of merit). Such evidence may be "any evidence, written or oral, by witnesses or affidavit, as may be material to the ground of the motion." Cal. Civ. Proc. Code § 391.2. In support of this prong, defendants submit declarations and CDCR records.

The application of California's vexatious litigant statute is permissive. See Local Rule 151(b) (court may order giving of a security and the court's power shall not be limited by

California's vexatious litigant statute); see generally Simmons v. Navajo County, Ariz., 609 F.3d 1011 (9th Cir. 2010) ("District courts have broad discretion in interpreting and applying their local rules.") (internal citation omitted). Under federal law, plaintiff's indigence is a factor. See generally, Simulnet East Associates v. Ramada Hotel Operating Co., 37 F.3d 573, 575-76 (9th Cir. 1994) (stating care must be taken not to deprive a plaintiff of access to the federal courts when considering motion for security, as such deprivation has "serious constitutional implications"); see also 28 U.S.C. § 1915(a) (supporting avoidance of limitation of access to courts due to indigence).

In addition, dismissal is the "ultimate sanction." See United States v. King, 200 F.3d 1207, 1214 (9th Cir. 1999). A court abuses its discretion if it imposes a sanction of dismissal without first considering its impact as well as the adequacy of less drastic sanctions. United States v. National Medical Enterprises, Inc., 792 F.2d 906, 912 (9th Cir. 1986). Although a requirement for security is not a dismissal, it imposes a potential financial barrier that may have the same dispositive effect as a dismissal. Accordingly, the court considers this possible impact in the context of the decision.

### 1.     Plaintiff's Allegations in the Present Case

In order to assess whether plaintiff has a reasonable chance of prevailing in this case, the allegations in plaintiff's verified complaint are reviewed in greater detail. Plaintiff's allegations may be fairly summarized as follows.

On March 5, 2019, plaintiff transferred to CSP-SAC to attend court on a criminal matter. Two days later, Sgt. Johnson approached plaintiff's cell, referenced the prior lawsuit, and loudly called plaintiff a "snitch." C/O Snowden also appeared at plaintiff's cell and said he would "help [plaintiff] out with" the other court case, which plaintiff alleges was "code" for filing false charges against plaintiff. Plaintiff complained and was moved to a new housing unit.

On the morning of March 14, 2019, defendant Gamboa, who is a staff psychologist, approached plaintiff to address a newly issued Rule Violation Report ("RVR") drafted by C/O Snowden and signed off by Sgt. Johnson. The RVR accused plaintiff of threatening great bodily injury or death against C/O Snowden. When plaintiff denied the allegations in the RVR, Gamboa

said, "Thank you . . . don't take it personal but know [*sic*] one wants you here. We are all on board with that decision, and we're a team."

On the same morning, Sgt. Anderson approached plaintiff's cell and directed him to cuff up for a court date scheduled later that afternoon. When plaintiff placed his hands in the food port, Sgt. Anderson forcefully grabbed and twisted plaintiff's left hand and wrist. Plaintiff attempted to free his hand, but Sgt. Anderson forcefully slammed plaintiff's hand and wrist against the steel door, injuring plaintiff's left wrist.

Following this interaction, Sgt. Anderson accused plaintiff of exposing himself to defendant Gamboa, of "gassing"[5] another correctional officer, and of cutting Anderson with a razor blade when Anderson tried to put handcuffs on plaintiff. Plaintiff denied each of these accusations. The next day, on March 15, 2019, Anderson relayed a message to plaintiff from C/O Snowden and Sgt. Johnson that "pay back was a bitch."

### 2. Exhaustion

Defendants first assert plaintiff has no reasonable chance of prevailing because he failed to exhaust administrative remedies. The Prison Litigation Reform Act (PLRA) of 1995 requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions. 42 U.S.C. § 1997e(a). This statutory exhaustion requirement applies to all inmate suits about prison life. Porter v. Nussle, 534 U.S. 516, 532 (2002).

In order to exhaust available administrative remedies, a prisoner must comply with the prison's procedural rules as a necessary precondition to bringing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 90 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 219 (2007).

Regardless of the relief sought, a prisoner must pursue an appeal through all levels of a prison's grievance process as long as some remedy remains available. "The obligation to exhaust

---

[5] Plaintiff does not explain what the term "gas" means in this context.

15

'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies ... available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (alterations and italics in original) (citing Booth v. Churner, 532 U.S. 731 (2001)).

Since exhaustion is mandatory, unexhausted claims may not be brought to court. Jones, 549 U.S. at 211 (citing Porter, 534 U.S. at 524); see also Ross v. Blake, 136 S. Ct. 1850, 1856 (2016) (reaffirming that "special circumstances" do not excuse a failure to exhaust if remedies were available). If a prisoner has not exhausted available administrative remedies before filing his federal suit, the court must dismiss the action without prejudice. McKinney v. Carey, 311 F.3d 1198, 1200-01 (9th Cir. 2002) (per curiam).

The failure to exhaust is an affirmative defense for which the defendants bear the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014). "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166; see also McBride v. Lopez, 807 F.3d 982, 988 (9th Cir. 2015). Otherwise, defendants must produce evidence proving the failure to exhaust and are entitled to summary judgment under Rule 56 if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. McBride, 807 F.3d at 985.

Plaintiff's allegations in the verified complaint state Sgt. Anderson denied plaintiff an appeal form. Plaintiff then obtained an appeal form from another inmate and submitted that form. Plaintiff alleges Anderson found out and informed plaintiff he had intercepted the appeal form. (ECF No. 1 at 5, 12.) Plaintiff additionally alleges Anderson stated to plaintiff on March 22, 2019 "your complaints are not going anywhere, I've already collected them all." (Id. at 11.)

The exhaustion requirement hinges on the "availability" of administrative remedies. Ross, 136 S. Ct. at 1858. "An inmate ... must exhaust available remedies, but need not exhaust unavailable ones." In discussing availability in Ross, the Supreme Court identified three circumstances in which administrative remedies were unavailable: (1) where an administrative remedy "operates as a simple dead end" in which officers are "unable or consistently unwilling to

1   provide any relief to aggrieved inmates;" (2) where an administrative scheme is "incapable of

2   use" because "no ordinary prisoner can discern or navigate it," and (3) where "prison

3   administrators thwart inmates from taking advantage of a grievance process through machination,

4   misrepresentation, or intimidation." Id. at 1859-60. Prison administrators thwart an inmate from

5   taking advantage of a grievance process if the actions of prison staff render a prisoner's

6   administrative remedies "effectively unavailable." See McBride, 807 F.3d at 987 ("the threat of

7   retaliation for reporting an incident can render the prison grievance process effectively

8   unavailable"); Albino, 747 F.3d at 1177 (failure to inform a prisoner of the administrative appeals

9   process following multiple requests for instruction rendered his administrative remedy effectively

10  unavailable); Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) (a plaintiff is not required

11  to exhaust further levels of review after being "reliably informed" by administrator that no further

12  remedies are available).[6]

13          In a declaration signed under penalty of perjury, Anderson denies interfering with

14  plaintiff's ability to exhaust his administrative remedies between the dates of March 14, 2019 and

15  March 22, 2019. (ECF No. 21-2 at 1 (Anderson Decl. at ¶ 9).) Defendants argue Anderson's

16  account is corroborated by the fact that plaintiff submitted two CDCR 602 appeals on March 14,

17  2019, both of which were processed by prison officials, and one of which specifically complained

18  of Anderson's conduct.

19          Anderson's account is indeed corroborated by plaintiff's CDCR 602 appeal SAC-S-19-

20  01156, which plaintiff submitted on March 14, 2019, alleging that Anderson had, earlier that day,

21  used unnecessary force by twisting plaintiff's wrist and slamming his hand against the cell door

22  after which he falsely accusing plaintiff of assault. (ECF No. 22 at 172 (Request for Judicial

23  Notice ("RJN") Ex. I.)) The Third Level Decision ("TLD") 1905950 rejected plaintiff's grievance

24  _____

25  [6] In Marella, the plaintiff inmate who was excused from exhausting "received a form rejecting the
    appeal because it was not timely filed and there was 'no explanation of why [he] did not, or could

26  not, file in a timely manner.' The form also stated that '[t]his screening action may not be
    appealed unless you allege that the above reason is inaccurate.' [The plaintiff] did not dispute that

27  his appeal was untimely, and he did not dispute that he had not explained why he was unable to
    file in a timely manner. Thus, according to the form, he was not permitted to appeal the decision."

28  Marella, 568 F.3d at 1027.

on August 8, 2019, which was approximately four months after plaintiff filed the underlying civil complaint in April of 2019. (Id. at 170.) This TLD does not constitute proper exhaustion as to the excessive force claim against Anderson because administrative remedies must be exhausted before filing suit. E.g., Jones, 549 U.S. at 21; McKinney, 311 F.3d at 1200-01 ("Congress could have written a statute making exhaustion a precondition to judgment, but it did not. The actual statute makes exhaustion a precondition to suit.").

Anderson's account is further corroborated by plaintiff's CDCR 602 appeal SAC-S-19-01155, which plaintiff also submitted on March 14, 2019, alleging that, earlier that day, Sgt. Johnson and other officers had punched him without any provocation, after which Johnson falsely claimed plaintiff had tried to "head" him. (ECF No. 22 at 182 (RJN Ex. J).) Although CDCR 602 appeal SAC-S-19-01155 complained of Johnson's conduct on March 14, 2019, and alleged Johnson used excessive force against plaintiff on that day, it did not complain of Johnson's conduct at issue in the present case, which does not include a use of force, and thus could not demonstrate proper exhaustion.[7] The TLD 1905952 rejected plaintiff's grievance on procedural grounds on August 8, 2019 for exceeding the allowable number of appeals within 14 days. (Id. at 181.)

Thus, defendants demonstrate plaintiff filed two grievance forms on March 14, 2019, both of which were processed by prison officials through the TLD within five months. The existence of these TLDs discredits plaintiff's allegations that defendant Anderson thwarted his attempt to exhaust administrative remedies against all four defendants. These TLDs further demonstrate plaintiff's administrative remedies were not "effectively unavailable" during the time period in question.[8] See McBride, 807 F.3d at 987.

////

---

[7] Instead, this appeal appears to relate to some or all of the claims in Howell v. Johnson, 2:20-cv-0520, which presented overlapping but not duplicative claims as the present case and which is still an open case.

[8] The events alleged in the complaint took place between March 7, 2019 and March 22, 2019. Plaintiff signed his verified complaint on March 28, 2019 and it was filed in this court on April 9, 2019.

In addition, the court takes judicial notice of the findings in Howell v. Cruz, No. 1:19-cv-0782 DAD SAB PC, 2020 WL 6700178, at *8 (E.D. Cal. Nov. 13, 2020), in which the court granted summary judgment to the defendants on the issue of non-exhaustion even though plaintiff claimed one of the defendants had denied him a grievance form in May of 2019 at CSP-Corcoran. Howell v. Cruz, 2020 WL 6700178, at *7. Based on the undisputed facts, the court found plaintiff had knowledge how to submit a grievance without direct involvement or interaction with a staff member upon whom he was complaining. See Id. at *8.

Moreover, in the present case, the alleged statements plaintiff attributes to Anderson that Anderson stated he had intercepted and/or collected plaintiff's grievances are not the type that could excuse plaintiff from exhaustion by "reliably inform[ing]" him that no further remedies are available. Marella, 568 F.3d at 1027. In light of the evidence produced by defendants, plaintiff's allegations that Anderson claimed to have intercepted plaintiff's complaints do not suffice to support a finding that administrative remedies were unavailable such that plaintiff was excused from exhausting.

While the Ninth Circuit has held that a motion for summary judgment, rather than a motion to dismiss, is the proper vehicle to raise whether a plaintiff has exhausted administrative remedies, the California procedure adopted by Local Rule 151 allows the court to weigh the evidence in determining reasonable probability of prevailing. These procedures are not competing, as section 391.2 expressly states "No determination made by the court in determining or ruling upon the motion shall be or be deemed to be a determination of any issue in the litigation or of the merits thereof." Cal. Civ. Proc. Code § 391.2. This court has on at least one previous occasion found that a plaintiff was a vexatious litigant for purposes of posting security and that there was no reasonable probability he would prevail because he did not exhaust available administrative remedies. See Carrea v. Iserman, No. 1:08-CV-00762-BLW, 2011 WL 1233111, at *6 (E.D. Cal. Mar. 31, 2011).

In this case, plaintiff's vexatiousness under the federal standard is based in significant part on his pattern of filing unexhausted claims. In the cases reviewed and listed herein, his claims are more often than not accompanied by an allegation that a defendant or other staff person prevented

him from exhausting. Under these circumstances, the undersigned considers the weight of defendants' evidence of non-exhaustion in assessing plaintiff's reasonable probability of prevailing. The evidence refutes plaintiff's allegations regarding the availability of the grievance procedure at the time in question, demonstrates he did not exhaust administrative remedies before filing suit, and therefore supports a finding that he does not have a reasonable chance of prevailing in the present case.

### 3.   Merits

To prevail on his First Amendment claims, plaintiff must demonstrate the defendants engaged in adverse action against him that was reasonably likely to chill the future exercise of free speech of a person of ordinary firmness. See Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005). For his Eighth Amendment claim, plaintiff must demonstrate Sgt. Anderson applied force "maliciously and sadistically to cause harm" rather than in "a good-faith effort to maintain or restore discipline...." See Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).

Defendants assert plaintiff has no reasonable chance of prevailing on the merits. They argue the weight of the evidence from their declarations, combined with their prior consistent statements in RVRs, preclude any such reasonable chance.

Defendants Johnson and Snowden deny calling plaintiff a snitch or falsifying charges against him on March 7, 2019. (ECF No. 21-4 (hereinafter "Johnson Decl.") at ¶¶ 2-4); ECF No. 21-5 (hereinafter "Snowden Decl.") at ¶ 4).) Snowden states that on March 7, 2019, plaintiff threatened to stab Snowden on the yard when Snowden disturbed plaintiff while conducting "guard one wellness checks" as required by his job duty, which occur every 30 minutes. Snowden states he submitted a true and accurate RVR against plaintiff for threatening great bodily injury, although plaintiff was ultimately found not guilty because the threat did not actually cause Snowden to fear for his life. (See Snowden Decl. at ¶¶ 3-4; ECF No. 22 at 111 (RJN Ex. G (RVR #6633344)).)

Defendants demonstrate plaintiff was found guilty of four separate RVRs issued on March 14, 2019, although plaintiff alleges in the complaint that these were false. (See ECF No. 21-3 (hereinafter "Gamboa Decl.") at ¶ 8); ECF No. 21-2 (hereinafter "Anderson Decl." at ¶ 7);

1    Johnson Decl. at ¶ 11; ECF No. 22 at 111 (RJN Ex. G at 2, 6, 10, 15).) Defendants' evidence sets

2    forth a timeline of the events of March 14, 2019 as follows.

3         Beginning at 7:50 a.m. that morning, plaintiff lewdly exposed himself to defendant

4    Gamboa by pulling his boxer briefs down below his scrotum and stroking his semi-erect penis

5    while Gamboa attempted to speak to him about another RVR. (See Gamboa Decl. at pp. 1-2; RJN

6    Ex. G at 8-11 (RVR #6691051).) Minutes later at 8:05 a.m., plaintiff "gassed" another officer by

7    causing brown liquid to flow out of his cell onto the officer's boots. (See Johnson Decl. at ¶ 6;

8    RJN Ex. G at 1-3 (RVR #6689244), at 12 (RVR #6691052).) Shortly thereafter at 8:20 a.m.,

9    plaintiff assaulted defendant Anderson with a deadly weapon. (See Anderson Decl. at ¶¶ 2-8; RJN

10   Ex. G at 4-7 (RVR #6690852); RJN Ex. H at 2, 7, 15-19 (Use of Force Report SAC-FAS-19-03-

11   0267).) Specifically, when attempting to cuff plaintiff's left hand through the cell food port door,

12   plaintiff spun around to his right and forced his left arm completely through the opening. Plaintiff

13   hit Anderson's right wrist with an unknown object. (Id.) In an attempt to distance himself from

14   plaintiff's reach, Anderson "spontaneously" slid the port door closed, which "inadvertently" hit

15   plaintiff's hand, causing plaintiff to drop a metal object that was later identified as a razor blade.

16   (Id.) Photographs confirm Anderson sustained a small laceration to his right forearm and an

17   abrasion on his left hand from the port door closing. (See Anderson Decl. at ¶ 8; RJN Ex. H at 16-

18   19.) Photographs also confirm a razor blade was located on the floor in front of plaintiff's cell.

19   (See Anderson Decl. at ¶ 8; RJN Ex. H at 15-16, 19.) Later that evening at 8:05 p.m., plaintiff

20   used his head to strike defendant Johnson's face while being escorted to a holding cell. (See

21   Johnson Decl. at ¶¶ 5-11; RJN Ex. G at 12-16 (RVR #6691052).)

22        Thus, the substantive merits of this case necessarily involve credibility determinations. A

23   trier of fact could very well find defendants' evidence to be convincing and plaintiff's evidence to

24   be incredible. As set forth, the court can weigh the evidence in determining plaintiff's reasonable

25   chance of success. Nevertheless, in this instance, the undersigned declines to base a

26   recommendation for a security from an indigent plaintiff on a finding that requires the court to

27   believe defendants' evidence and disregard plaintiff's evidence as to the substantive merits of all

28   of the claims. Thus, the basis for recommending an order that security be posted is the weight of

1   the evidence demonstrating plaintiff did not exhaust administrative remedies prior to filing suit

2   and that he was not thwarted from doing so. Based on this evidence, the undersigned finds

3   plaintiff has no reasonable chance of prevailing in this case.

4                           **D.      Amount of Security**

5          Defendants request plaintiff be required to post security in the amount of $8,800 before

6   this matter proceeds. (ECF No. 21.) This figure is based on defense counsel's hourly rate of

7   $222.00 multiplied by the 40 hours expended in researching, investigating, and preparing the

8   instant motion. (ECF No. 21-1 at 15.) This is an appropriate measure and $8,800 is an appropriate

9   amount of security to be posted in order for this litigation to proceed. <u>See, e.g.</u>, <u>Fields</u>, 2016 WL

10  1162083, at *13 (calculating amount of security based on counsel's hourly rate multiplied by the

11  number of hours expended to prepare the motion for security).

12  **V.    Conclusion**

13         Based on the foregoing, defendants have shown that plaintiff is a vexatious litigant under

14  the federal standard for purposes of posting security in this case, and that there is no reasonable

15  probability he will prevail because he did not exhaust available administrative remedies. The

16  undersigned does not lightly recommend that a financial barrier be erected to an indigent inmate

17  seeking access to the courts with substantively non-frivolous legal claims. Although plaintiff is

18  proceeding in forma pauperis, the undersigned declines to find this status is a barrier to an order

19  to furnish security under the circumstances of this case.

20         In accordance with the above, IT IS HEREBY ORDERED:

21     1. Defendants' request for judicial notice (ECF No. 22) is granted in part, and denied in

22         part, as set forth herein; and

23     2. The Clerk's Office shall assign a district judge to this case.

24         In addition, IT IS RECOMMENDED:

25     1. Defendants' motion for security (ECF No. 21) be granted;

26     2. Plaintiff be declared a vexatious litigant under the provisions of Title 3A, part 2, of the

27         California Code of Civil Procedure, adopted by this court pursuant to Local Rule

28         151(b); and

3.  Plaintiff be required to post security in the amount of $8,800.00 within thirty days in order for this litigation to proceed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 4, 2021

DLB7
howe0611.vex lit

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

23